IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CONSTANCE JEANNE SAMMARCO :
:
:
v. : Civil No. CCB-13-1079
:
:
BOARD OF EDUCATION OF :
PRINCE GEORGE'S COUNTY :

## MEMORANDUM

Plaintiff Constance Jeanne Sammarco, a former employee of defendant Prince George's County Public Schools, representing herself, filed this action alleging hostile work environment, retaliation, and discriminatory treatment based on race and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"). The school board has moved to dismiss Ms. Sammarco's complaint for failure to state a claim. For the reasons stated below, the board's motion will be granted.

## BACKGROUND

Ms. Sammarco, a 62-year-old white female, taught high school English at Fairmont Heights High School in Prince George's County from 2003 to 2012. (Compl., ECF No. 1, ¶¶ 1-2). It appears that Nakia Nicholson became principal of Fairmont Heights in 2009. (*Id.* ¶¶ 9-10). In 2010, Ms. Sammarco began receiving negative performance evaluations from Ms. Nicholson, which are attached to the school board's motion to dismiss.[1] (*Id.* ¶¶ 10-11; Def.'s Mot., ECF No.

---

[1] "[W]hen a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999)). Though she disagrees with their substance, (Compl. ¶ 5), Ms. Sammarco refers to the negative evaluations in her complaint as support for her discrimination allegations and does not dispute their authenticity, (Compl. ¶¶ 4, 11, 13, 14, 17, 64).

1

8, Exs. 2, 4, 7-8). In her complaint, Ms. Sammarco details her dissatisfaction with the way in which Ms. Nicholson managed the school, conducted observations and evaluations of Ms. Sammarco, and provided feedback. She alleges that Ms. Nicholson focused on hiring younger teachers, and that she treated younger teachers and black teachers more favorably. (Compl. ¶¶ 15-39). Ms. Sammarco makes similar allegations about her assistant principals, Donna Daniel and Michael Austin, alleging, for example, that they unreasonably observed her teaching and made false statements about her. (*Id.* ¶¶ 42-43, 46). Ms. Sammarco also alleges that her department head, Eleanor Conwell, Corporal Sharon Gay, a school employee, and the mentor teacher assigned to help her improve her teaching, Jonathan Wemple, made false statements about her, negatively evaluated her, and failed to follow school policies in their dealings with her. (*Id.* ¶¶ 49-60).

After two years of negative formal evaluations and, according to these evaluations, the failure of Ms. Sammarco to improve, Ms. Nicholson recommended that Ms. Sammarco be terminated. (Def.'s Mot., ECF No. 8, Ex. 9 ("Termination Letter")). The findings in these evaluations were apparently mirrored by negative observations and reprimands Ms. Sammarco received from both of her assistant principals, her department head, and her mentor teacher. (*See* Compl. ¶¶ 41-43, 46-47, 50, 59).

Ms. Sammarco subsequently was placed on administrative leave by Superintendent William Hite on August 17, 2012, pending a final resolution of the termination process. Ms. Sammarco appealed the termination recommendation, and the hearing examiner affirmed Dr. Hite's recommendation on June 18, 2013. (*See* Correspondence, ECF No. 15). In her complaint, Ms. Sammarco alleges that five Prince George's County schools employees involved in her

administrative appeal also treated her unfairly and/or made false statements about her. (Compl. ¶¶ 61-70).

Ms. Sammarco appears to have begun alleging that she was being treated unfairly at the high school based on race and age in letters she wrote to various entities sometime in the spring of 2012, as well as by filing suit under Title VII and the ADEA on April 26, 2012. (*Id.* ¶ 7). Her suit initially was dismissed for failure to exhaust administrative remedies, but she received a right to sue letter from the EEOC in February 2013, (ECF No. 1-1), and she filed this action in April 2013.

## **ANALYSIS**

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast'

evidence sufficient to prove the elements of the claim. . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Construing her complaint liberally, Ms. Sammarco appears to be alleging disparate treatment based on race and age, hostile work environment, and retaliation for protected activity. The school board argues that Ms. Sammarco failed to properly serve the defendants, that her claims are not ripe, and that she has failed to state a claim upon which relief can be granted. Because, as explained below, Ms. Sammarco has not plausibly alleged any cognizable claim under Title VII or the ADEA,[2] the court will assume, without deciding, that service was effective and that her complaint is timely.

**I. Disparate Treatment**

Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). In order to state a prima facie claim of discrimination under Title VII, a plaintiff must plausibly allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). "A similar analysis is conducted for [a plaintiff's]

---

[2] Because Ms. Sammarco fails to allege any information to support a plausible claim for relief, discovery is unnecessary. *See Francis*, 588 F.3d at 193 (citing *Iqbal*, 556 U.S. at 678-79). Thus, her motion for discovery rights, (ECF No. 12), will be denied.

4

claim of age discrimination, except that the fourth element is satisfied with proof of replacement by a substantially younger worker—not proof of replacement by someone entirely outside the ADEA's protected class." *Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002).

Ms. Sammarco has failed to state a prima facie claim of disparate treatment under Title VII and the ADEA because she has not plausibly alleged that she was satisfactorily performing her duties, nor that similarly situated employees of a different race or age received more favorable treatment. All of the grievances Ms. Sammarco levels at her principal and ten other Prince George's county employees revolve around her unhappiness with the teacher evaluation process and the administrative appeals process. She obviously feels that the school district has treated her unfairly, and she vigorously disagrees with the negative evaluations, reprimands, training, and advice she received during her tenure. The evaluations with which she disagreed, however, are consistent in their negative findings; according to her complaint, she was negatively observed and reprimanded by her two assistant principals, her department head, and her mentor teacher, in addition to her principal; and she was given opportunities to improve over the course of two years. All of these facts, as alleged, preclude an inference that Ms. Sammarco was meeting the legitimate expectations of the school district. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 516-18 (4th Cir. 2006) (affirming that plaintiff did not meet performance prong of a prima facie claim under Title VII because he received reprimands "based on concrete, specific observations and [his employer] accompanied its reprimands with explicit instructions on how to improve"); *Hart v. Broadway Services, Inc.*, 899 F. Supp. 2d 433, 442 (D. Md. 2012) (finding plaintiff failed to show he was performing his duties at a level meeting his employer's "legitimate expectations," even though he had "three positive performance evaluations" in his

file, because "[i]n the final two years before [he] was terminated, his performance was decidedly poor.").

Furthermore, Ms. Sammarco has not shown that younger individuals or teachers of other races were treated more favorably than her. *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) ("Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'") (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).[3] She has also not pled any other circumstance which would give "rise to an inference of unlawful discrimination." *Bryant v. Aiken Regional Medical Centers, Inc.*, 333 F.3d 536, 545 (4th Cir. 2003) (internal quotation marks and citation omitted). It is not plausible that the entire cadre of administrators and fellow educators that Ms. Sammarco alleges participated in her observation, evaluation, termination, and appeals process and made false statements about her performance were collectively discriminating against her based on race or age. Ms. Sammarco was negatively evaluated by both white and black employees. (*E.g.*, Compl. ¶¶ 9-10, 56, 59). Her complaint contains only conclusory allegations that younger teachers or teachers of different races were treated more favorably. (Compl. ¶¶ 28-31, 35, 40). In fact, there is no indication that her principal and the other employees involved in her evaluations or termination process treated any other employee any differently—any difference in treatment, based on Ms. Sammarco's own allegations, appears to turn on differences in performance, not differences in race or age. Accordingly, her Title VII and ADEA disparate treatment claims must be dismissed.

---

[3] Unpublished cases are cited only for the soundness of their reasoning, not for any precedential value.

**II. Hostile Work Environment**

To establish a hostile work environment claim under Title VII or the ADEA, a plaintiff must show that: (1) she is a member of a protected class under Title VII or the ADEA; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183–84 (4th Cir. 2001) (setting out the elements of a racially hostile work environment claim); *Baqir v. Principi*, 434 F.3d 733, 745–46, 746 n.14 (4th Cir. 2006) (assuming without deciding that a hostile work environment claim is cognizable under the ADEA). To prove a hostile work environment claim, a plaintiff must show not only that she subjectively believed her workplace environment was hostile, but also that a reasonable person could perceive it to be objectively hostile. *Equal Emp't Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). To determine whether a reasonable person would perceive workplace conduct to be severe and pervasive, the court considers a number of factors, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (internal quotation marks and citation omitted).

To support her hostile work environment claim, Ms. Sammarco makes a variety of generalized statements about the way eleven different Prince George's county employees treated her in every step of the observation, evaluation, termination, and appeals process. She alleges, for example, that her mentor's presence in her classroom "interrupted and slowed the progress of [her] Advanced Placement class and her teaching ability," and that her assistant principal, Donna

7

Daniel, "harassingly observed [her] at unreasonable times." (Compl. ¶¶ 42, 58). These incidents do not constitute harassment based on her protected status. Ms. Sammarco makes no factual allegations that her supervisors threatened or humiliated her, beyond conclusory statements that she was mistreated and unfairly criticized for her performance. Ms. Sammarco, in her complaint, does not point to any situation in which her supervisors or colleagues made offensive utterances regarding her race or age.[4] For harassment to be sufficiently severe or pervasive, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). "[I]solated personnel decisions," such as those Ms. Sammarco cites, simply do not rise to the level of a hostile work environment. *Pueschel v. Peters*, 577 F.3d 558, 566 (4th Cir. 2009); *see also Lewis v. Dist. of Columbia.*, 653 F. Supp. 2d 64, 80 (D.D.C. 2009) (explaining that in hostile work environment claims, it is important to "exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals." (internal citations and quotation marks omitted)). Indeed, the incidents Ms. Sammarco points to as evidence of a hostile work environment are almost entirely related to the formal and informal feedback she received about her performance. Her claims that younger employees and employees of other races were treated better than she was treated is supported by no factual allegations such that the court can infer her treatment was

---

[4] In her opposition to the school board's motion to dismiss, Ms. Sammarco alleges for the first time that Ms. Nicholson stated, "How old are you anyhow? I would never be working at your age," and, another time, "Oh, you white women are so weak." (Pl.'s Opp., ECF No. 13, at 22). Even if the court were to accept these allegations as true and incorporate them into the complaint, Ms. Sammarco has not alleged a severe or pervasive pattern of discriminatory conduct. The extensive additional allegations made in her opposition memorandum, consistent with the allegations in her complaint, focus on Ms. Sammarco's unhappiness with the mentorship, observation, and evaluation process that led to her termination, and with Ms. Nicholson's general management style.

based on race or age. *See, e.g.*, *Causey v. Balog*, 162 F.3d 795, 801–02 (4th Cir. 1998) (holding that the plaintiff had failed to establish a hostile work environment claim where there were no allegations of derogatory comments and only conclusory allegations that he was treated less favorably than younger or black employees). Because Ms. Sammarco's complaint, at the very least, fails to make factual allegations of harassment based on her race or age that could plausibly be considered severe or pervasive, her hostile work environment claim also must be dismissed.

### III. Retaliation

Finally, to establish a claim of retaliation, Ms. Sammarco must allege "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Although she does not directly state as much, the complaint appears to allege Ms. Sammarco engaged in protected activity by writing letters to the ACLU, the Maryland State Department of Education, and the Prince George's County Educators Association related to alleged discriminatory treatment, and by filing a lawsuit alleging race and age discrimination in April 2012. (Compl. ¶ 7). She subsequently filed an EEOC charge and received a right-to-sue letter, (ECF No. 1-1), but this appears to have occurred after she received her final negative evaluation from Ms. Nicholson. More importantly, the only direct allegations of retaliation in her complaint appear to relate to her ongoing grievances regarding the evaluation, observation, and mentoring process. (Compl. ¶¶ 34, 49; *see also, e.g.*, Pl.'s Opp., ECF No. 13, at 23 (alleging she was retaliated against for filing a "20-page rebuttal" to a negative evaluation with which she disagreed)). Ms. Sammarco appears to allege that both Ms. Nicholson and Ms. Conwell, her

department head, retaliated against her for these complaints,[5] but complaining about employment problems unrelated to discrimination is not a protected activity under Title VII. *See Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 258-59 (4th Cir. 1998) (defining protected activity to include either "opposing discriminatory practices in the workplace" or "participating in an ongoing investigation or proceeding under Title VII"). Even if her complaint could be read to include a retaliation claim based on alleged protected activity, Ms. Sammarco began receiving negative evaluations in 2010, long before any such activity, and there is no plausible basis in her complaint to infer that any decisionmaker knew of or reacted to her alleged complaints of discrimination. *See Causey*, 162 F.3d at 803; *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Ms. Sammarco's evaluations are generally consistent in their negative findings between 2010 and the end of the 2012 school year, when Ms. Nicholson recommended Ms. Sammarco be terminated, and the negative evaluations were corroborated by negative observations and reprimands she received from her assistant principals, her department head, and her mentor teacher. No plausible link between her protected activity and her ultimate termination exists. Accordingly, Ms. Sammarco's complaint does not state any plausible claim of retaliation, and her retaliation claim also will be dismissed.

## CONCLUSION

For the reasons stated above, the school board's motion to dismiss will be granted and Ms. Sammarco's complaint will be dismissed.

---

[5] To the extent Ms. Sammarco wishes to hold Ms. Nicholson, Ms. Conwell, or other employees of Prince George's County schools, liable in their personal capacities for violating Title VII or the ADEA, such claims are not cognizable. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998) (holding that "supervisors are not liable in their individual capacities for Title VII violations" and noting the same for ADEA violations). Accordingly, her motion to amend her summons and list each employee as a defendant, (ECF No. 11), will be denied.

A separate Order follows.

September 16, 2013                                              /s/
        Date                                        Catherine C. Blake
                                                    United States District Judge